UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| JOHN SEMRAU, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 3:14-CV-01774-CAN |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

Plaintiff John Semrau ("Semrau") filed his complaint in this Court seeking reversal of the Social Security Commissioner's final decision to deny his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. Alternatively, Semrau seeks a remand for further consideration of his application. For the reasons discussed below, this Court **AFFIRMS** the Commissioner's final decision.

**I.     PROCEDURE**

On August 22, 2011, Semrau filed his Title II application for DIB with the Social Security Administration ("SSA") pursuant to 42 U.S.C. § 423 alleging disability beginning July 15, 2008. The SSA denied Semrau's application initially on October 19, 2011, and again upon reconsideration on February 29, 2012. On February 20, 2013, a hearing was held before an administrative law judge ("ALJ") where Semrau and an impartial expert appeared and testified. On March 19, 2013, the ALJ issued his decision finding that Semrau was not disabled at Step Five of the evaluation process and denied Semrau's application for DIB. On May 1, 2014, the Appeals Council denied Semrau's request for review, making the ALJ's decision the final decision of the Commissioner.

On August 5, 2014, Semrau filed a complaint in this Court seeking reversal or remand of the Commissioner's decision. On October 12, 2015, Semrau filed his opening brief. Thereafter, on January 19, 2016, the Commissioner filed a responsive memorandum asking the Court to affirm the decision denying Semrau benefits. Semrau filed his reply brief on February 2, 2016. This Court may enter a ruling in this matter based on the parties' consent pursuant to 28 U.S.C. § 636(b)(1)(B) and 42 U.S.C. § 405(g).

## II.     RELEVANT BACKGROUND

Semrau was born on October 18, 1964, making him a 46 years old at the alleged disability onset date of July 15, 2008. Semrau sought DIB based upon cognitive deficits related to a brain disorder. Semrau has a college degree and has substantial work history, including work as a shipping and receiving clerk for approximately 17 years, but he lost that job when the facility closed. While working as a shipping and receiving clerk, Semrau made numerous mistakes for which his boss, also his stepfather, made allowances that permitted him to keep his job. He was able to keep a subsequent job as a janitor for about a year before being terminated for poor performance. Unemployed, Semrau applied for disability benefits.

At the hearing before the ALJ, Semrau testified regarding his conditions alleging that he suffered from vertigo, GERD, tinnitus, asthma, fatigue, and difficulties with memory, concentration, and cognition. Semrau testified that he is able to engage in physical activities and that he has no difficulty performing personal care tasks. Before the hearing, Semrau provided the ALJ with a single medical evaluation dated December 2006 from neuropsychologist, David A. Kareken, Ph.D. along with medical records dated May 2009 to October 2012 from his treating neurologist, Sanjeev V. Maniar, M.D.

After the hearing, the ALJ issued a written decision reflecting the following findings based on the five-step disability evaluation prescribed in the SSAs regulations.[1] At Step One, the ALJ found that Semrau had not engaged in substantial gainful activity since July 15, 2008, the alleged onset date. At Step Two, the ALJ found that Semrau had the following severe impairment: disorder of the brain with associated cognitive deficits. He also found that Semrau suffered from several non-severe impairments including vertigo, tinnitus, palpitations, and asthma. However, at Step Three, the ALJ found that Semrau's severe mental impairment did not meet or medically equal a Listing.

Before proceeding to Step Four, the ALJ determined Semrau's residual functional capacity ("RFC"). The ALJ concluded that Semrau had the ability to perform the full range of work at all exertional levels but with some nonexertional limitations. The ALJ found Semrau was able to perform the following functions:

> [Semrau] was able to understand, remember and carry out short, simple, repetitive instructions; [Semrau] was able to sustain attention and concentration for two-hour periods at a time and for eight hours during the workday on such instructions; [Semrau] was able to use judgment in making work decisions related to such instructions…

(Doc. No. 12 at 20). The ALJ found that Semrau's functional capacity was limited as follows:

> [Semrau] required an occupation with set routine and procedures, and few changes during the workday; [Semrau] was unable to perform fast-past production work, but he could maintain regular attendance, be punctual within customary tolerances, and perform activities within a schedule.

(Doc. No. 12 at 20). At Step Four, the ALJ found that the aforementioned limitations prevented Semrau from performing any of his past relevant work. At Step Five, however, the ALJ considered Semrau's age, education, work experience, and RFC and determined that Semrau was

---

[1] *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001); *see also Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

able to perform a significant number of jobs in the national economy, including kitchen helper, salvage laborer, production assembler, or a small products assembler.

Based on these findings, the ALJ determined in his March 19, 2013, written decision that Semrau had not been under a disability from July 15, 2008. (Doc. No. 12 at 26). Semrau requested that the Appeals Council review the ALJ's decision, and on May 1, 2014, the Appeals Council denied review of the ALJ's decision, making it the Commissioner's final decision. *See Fast v. Barnhart*, 397 F.3d 468, 470 (7th Cir. 2005); 20 C.F.R. § 404.981.

### III. ANALYSIS

#### A. Standard of Review

On judicial review, under the Social Security Act, the Court must accept that the Commissioner's factual findings are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Thus, substantial evidence is simply "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Kepple v. Massanari*, 268 F.3d 513, 516 (7th Cir. 2001).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility or substitute its judgment for that of the ALJ. *Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005). Thus, the question upon judicial review is not whether the claimant is, in fact, disabled, but whether the

ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013). The ALJ must build a logical bridge from the evidence to his conclusion and a reviewing court is not to substitute its own opinion for that of the ALJ, or to re-weigh the evidence. *Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

Minimally, an ALJ must articulate his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). However, the ALJ need not specifically address every piece of evidence in the record, but must present a "logical bridge" from the evidence to his conclusions. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010). The ALJ must provide a glimpse into the reasoning behind his analysis and the decision to deny benefits. *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001).

B.  **Issues for Review**

Semrau seeks reversal or remand of the ALJ's decision, arguing that ALJ erred when he failed to obtain a medical expert at Step Three, as required by SSR 96-6p, to determine whether Semrau's combined impairments met or medically equaled a Listing. Semrau also contends that the ALJ's RFC assessment was unsupported by any rationale or reference to supporting evidence. In other words, Semrau argues that the ALJ failed to articulate a "logical bridge" between the evidence and his conclusion. Furthermore, Semrau contends that the ALJ failed to consider the aggregate effect of all impairments, including those the ALJ determined were not severe, in determining his RFC. Semrau also alleges that the ALJ erred in fully crediting the VE's testimony at Step Five as the VE provided no data source for his estimates. The Commissioner, however, opposed all of Semrau's arguments.

As a preliminary note, none of the parties' briefs were particularly persuasive, especially in light of their extremely limited citations to applicable legal authority. The parties' briefs were confusing at best. Nevertheless, the Court now addresses the issues presented by the parties.

1. Resolving Step Three did not require an additional medical expert

Semrau's primary argument is that the ALJ erred in not complying with the requirements of SSR 96-6p when he failed to obtain a medical expert at Step Three to determine whether Semrau's combined impairments met or medically equaled a Listing. (Doc. No. 16 at 6). The Commissioner, however, argues that the ALJ did not err because: (1) the record contains opinions from two State agency doctors on equivalence, (2) the ALJ did explain the weight he gave to the State agency doctors' opinions, and (3) the ALJ is not required to obtain an updated medical opinion under the circumstances presented in this case.

At Step Three, an ALJ must consider whether a disability claimant has one or more conditions that the SSA considers conclusively disabling. 20 C.F.R § 404.1520(d). If the claimant has a severe impairment that meets or equals an impairment found in the Listing, then the claimant is presumptively disabled. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004). The Seventh Circuit has emphasized that an ALJ's Step Three determination must satisfy the "substantial evidence" standard upon review. *Id*. An ALJ must first "discuss the listing by name." *Id*. Second, an ALJ is required to "offer more than a perfunctory analysis of the listing." *Id*. And third, because the determination of whether a claimant's impairment equals a Listing is a medical judgment, an ALJ "must consider an expert's opinion on the issue." *Id*. at 670.

All three requirements reflect the need for the ALJ to base his conclusions on "substantial evidence" and to provide an "accurate and logical bridge" between the evidence and

his conclusions. *Id*. The SSA, when drafting the rules, specifically drew the third requirement from the relevant SSRs and regulations. *Nelson v. Apfel*, 210 F.3d 799, 803 (7th Cir. 2000).

The SSRs and regulations make it clear that the ALJ is responsible "for deciding the ultimate legal question of whether a listing is met or equaled." SSR 96-6p. At the same time, however, "longstanding policy requires that the judgment of a physician (or psychologist) designated by the Commissioner on the issue of equivalence on the evidence before an ALJ or Appeals Council must be received into the record as expert opinion evidence and given appropriate weight." *Id*. The SSA states that ALJ must "consider the opinions given by one or more medical and psychological consultants designated by the Commissioner" when making an equivalence determination. 20 C.F.R. § 404.1526(c).

An ALJ must rely on a medical expert's opinion when finding a claimant does not meet or equal a listed impairment. SSR 96-6p. Some instances require the ALJ to hear additional evidence from a medical expert. *Green v. Apfel*, 204 F.3d 780, 781 (7th Cir. 2000). When the medical evidence in the record is sufficient to make a decision, an ALJ may rely on it alone. *Simila v. Astrue*, 573 F.3d 503, 515 (7th Cir. 2009). SSR 96-6p requires that the ALJ obtain an updated medical opinion from a medical expert as to the issue of equivalence only in the following two circumstances:

> (1) When no additional medical evidence is received, but in the opinion of the [ALJ]…the symptoms, signs, and laboratory findings reported in the case record suggest that a judgment of equivalence may be reasonable; or (2) when additional medical evidence is received that in the opinion of the [ALJ]…may change the State agency medical or psychological consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments.

SSR 96-6p; *see generally* 20 C.F.R § 404.1526.

The ALJ in the present case fulfilled his SSR 96-6p obligations despite the failure of Semrau's representative to argue that Semrau's impairments met or equaled a Listing.

7

Moreover, the ALJ conducted a Listing analysis based on both the objective medical evidence in the record and the requirements set forth in the applicable Listings. First, the ALJ determined that the case record did not suggest that a judgment of equivalence may be reasonable. *See* SSR 96-6p. In support, the ALJ noted that no treating or examining physician had indicated findings that would satisfy any listed impairment. (Doc. No. 12 at 18). The ALJ also spent nearly two pages, with numerous citations to the record, discussing the severity of Semrau's impairments and explaining why the Listing criteria were not satisfied. (Doc. No. 12 at 18-20).

And second, the ALJ's decision shows his belief that additional medical evidence would not change the equivalency determination. *See* SSR 96-6p. The ALJ explicitly discussed Listing 12.02 by name and offered more than a perfunctory analysis of the Listing. (Doc. No. 12 at 19-20). The ALJ also discussed Semrau's testimony, Dr. Maniar's 2009 evaluation of Semrau, and the evaluations of State agency consultants, Joelle Larsen, Ph.D., and William Shipley, Ph.D. The ALJ specifically reported that Dr. Maniar's conclusion combined with Semrau's own testimony demonstrated only moderate difficulties with concentration, persistence, and pace. The ALJ even discounted Dr. Larsen's and Dr. Shipley's opinions because they underestimated the severity of Semrau's psychological impairment. As a result, the ALJ gave Semrau the benefit of the doubt suggesting that more medical evidence would not change the Listing analysis. (Doc. No. 12 at 19-20). Thus, the ALJ was not required to get an updated medical opinion on the issue of equivalency per SSR 96-6p.

Semrau's argument based on *Barnett v. Barnhart* that an ALJ cannot substitute his own lay opinion for actual medical evidence is misplaced. The ALJ in *Barnett did not consult any medical expert or even rely on a signed Disability Determination. Barnett, 381 F.3d at 670-71. Instead, the ALJ in Barnett* based his findings solely on his own lay opinion. *Id*. at 671. As

shown above, the ALJ here relied on evidence from Dr. Maniar, Semrau's treating neurologist, in the Listing analysis. Accordingly, the ALJ made no legal error in his Listing analysis by failing to seek out another medical expert.

## 2. The ALJ's RFC is supported by substantial evidence

In attacking the ALJ's RFC determination, Semrau alleges that the ALJ's RFC assessment was unsupported by any rationale or reference to supporting evidence. Specifically, Semrau asserts that the ALJ failed to consider the aggregate effect of all impairments and failed to articulate a "logical bridge" between the evidence and the conclusion. This Court disagrees. As the Commissioner argues, the ALJ specifically identified and discussed the severity and effect of each impairment in his RFC analysis.

An individual's RFC demonstrates his ability to do physical and mental work activities on a sustained basis despite functional limitations caused by medically determinable impairments and their symptoms, including pain. 20 C.F.R. § 416.945; SSR 96-8p. In making a proper RFC determination, an ALJ must consider all of the relevant evidence in the case record, including evidence of functional limitations resulting from nonsevere impairments. 20 C.F.R. § 415.20(e). The record may include medical signs, diagnostic findings, the claimant's statements about the severity and limitations of symptoms, statements and other information provided by treating or examining physicians and psychologists, third party witness reports, and any other relevant evidence. SSR 96-7p. "Careful consideration must be given to any available information about symptoms because subjective descriptions may indicate more severe limitations or restriction than can be shown by objective medical evidence alone." SSR 96-8p.

It remains the claimant's responsibility to provide medical evidence showing how his impairments affect his functioning. 20 C.F.R. § 416.912(c). Therefore, when the record does

shown above, the ALJ here relied on evidence from Dr. Maniar, Semrau's treating neurologist, in the Listing analysis. Accordingly, the ALJ made no legal error in his Listing analysis by failing to seek out another medical expert.

## 2. The ALJ's RFC is supported by substantial evidence

In attacking the ALJ's RFC determination, Semrau alleges that the ALJ's RFC assessment was unsupported by any rationale or reference to supporting evidence. Specifically, Semrau asserts that the ALJ failed to consider the aggregate effect of all impairments and failed to articulate a "logical bridge" between the evidence and the conclusion. This Court disagrees. As the Commissioner argues, the ALJ specifically identified and discussed the severity and effect of each impairment in his RFC analysis.

An individual's RFC demonstrates his ability to do physical and mental work activities on a sustained basis despite functional limitations caused by medically determinable impairments and their symptoms, including pain. 20 C.F.R. § 416.945; SSR 96-8p. In making a proper RFC determination, an ALJ must consider all of the relevant evidence in the case record, including evidence of functional limitations resulting from nonsevere impairments. 20 C.F.R. § 415.20(e). The record may include medical signs, diagnostic findings, the claimant's statements about the severity and limitations of symptoms, statements and other information provided by treating or examining physicians and psychologists, third party witness reports, and any other relevant evidence. SSR 96-7p. "Careful consideration must be given to any available information about symptoms because subjective descriptions may indicate more severe limitations or restriction than can be shown by objective medical evidence alone." SSR 96-8p.

It remains the claimant's responsibility to provide medical evidence showing how his impairments affect his functioning. 20 C.F.R. § 416.912(c). Therefore, when the record does

not support specific physical or mental limitations or restrictions on a claimant's work related activity, the ALJ must find that the claimant has no related functional limitations. SSR 96-8p. An ALJ need not mention every piece of evidence in the record, but must connect the evidence to the conclusion. *Denton v. Astrue, 596 F.3d 419, 425 (7th Cir. 2010).*

*This Court finds that the ALJ's RFC is adequately supported. The ALJ's opinion reflects a careful consideration of Semrau's alleged symptoms. The ALJ provided a lengthy discussion of Semrau's testimony regarding the majority of his impairments and the information in the medical records. The ALJ explicitly acknowledged Semrau's vertigo citing to Dr. Maniar's record of Semrau complaining of vertigo symptoms in 2009. (Doc. No. 12 at 18, 21). The ALJ also noted that Dr. Maniar's 2009 physical examination showed Semrau's gait and station to be normal and his dizziness to be stable. Id* at 18. The ALJ further stated that Semrau's other reported activities did not suggest significant limitations due to this condition. *Id*. The ALJ relied on Semrau's testimony that he is still able to drive, mow grass, use a snow blower, use a chainsaw, and hike. *Id*. Additionally, the ALJ noted that Semrau, despite alleging symptoms of tinnitus, had no apparent difficulty hearing or responding appropriately during the hearing. *Id*. The ALJ also cited Dr. Maniar's 2009 exam notes stating that Semrau's hearing was normal despite his purported tinnitus. *Id*.

After addressing Semrau's alleged vertigo and tinnitus, the ALJ next discussed Semrau's alleged cardiac arrhythmias and palpitations. At this point, the ALJ referenced several different sources of medical evidence, including a 2009 cardiac evaluation, an EKG, and a treadmill stress test. *Id*. The ALJ addressed the termination of Semrau's treadmill stress test due to reported dyspnea and fatigue. In doing so, the ALJ noted that Semrau still achieved the target maximal heart rate, was negative for ischemia, and remains able to perform numerous physical activities.

10

The ALJ further referenced Semrau's testimony that he suffers from, and takes prescriptions for, asthma. *Id*. The ALJ relied on Semrau's testimony that his asthma does not affect his ability to walk or ability to engage in a wide variety of activities. *Id*.

While Semrau seemingly asserts that there is no discussion in the ALJ's opinion as to how the RFC addressed his memory impairment, the ALJ found that Semrau had moderate difficulties with memory, concentration, and cognition. *Id*. at 19. The ALJ cited to an evaluation by Dr. Maniar, which indicated that Semrau could follow simple and complex commands. The ALJ also referenced that Semrau was able to graduate from college in computer information while home-schooling his children at the same time and that he was looking for work in computer and technology fields. The ALJ explicitly relied on this testimony before concluding that Semrau had a relatively high level of cognitive functioning. *Id*. at 22.

Furthermore, the ALJ gave Semrau the benefit of the doubt with regards to concentration, persistence, or pace. The ALJ's RFC included limitations preventing Semrau from performing fast-paced production work despite noting that the evidence did not suggest that Semrau had significant difficulties in these areas. *Id*. at 19. Additionally, the ALJ noted that Semrau's verbal reasoning ability was average and his ability to perform backward digit spans was mildly impaired. *Id*. The ALJ also noted that Dr. Kareken identified some impairment in anterograde memory that might have been related to Semrau's history of radiation treatment. Nevertheless, the ALJ also referenced that Dr. Kareken found Semrau had well-preserved cognitive function, including reasoning, concentration, and mental flexibility. *Id*. In addition, the ALJ stated that neither Dr. Kareken nor Dr. Maniar made detailed clinical findings that would be useful in evaluating the nature and severity of the alleged impairments, nor did any treating or examining

11

physician make any clinical finding as to any functional limitation that would preclude Semrau from working in accordance with the assessed RFC. *Id* at 22-23.

Contrary to Semrau's contention otherwise, the ALJ went into substantial detail about Semrau's alleged impairments. After doing so, the ALJ concluded that Semrau could perform a full range of work at all exertional levels with certain nonexertional limitations. Consequently, the ALJ's RFC analysis was supported by substantial evidence.

### 3. The ALJ's Step Five Determination

Finally, Semrau challenges the ALJ's Step Five determination by arguing that the ALJ erred by fully crediting the VE's testimony when the VE provided no data sources for his estimates. The Commissioner argues that ALJ did not err because the VE's testimony was not challenged at the hearing entitling the ALJ to rely on it.

The ALJ bears the burden at Step Five of establishing that the claimant can perform other work that "exists in significant numbers in the national economy." *Overman v. Astrue,* 546 F.3d 456, 464 (7th Cir. 2008). If a VE's testimony is reliable, it can satisfy this burden. *Britton v. Astrue,* 521 F.3d 799, 803 (7th Cir. 2008). "A finding based on unreliable VE testimony is equivalent to a finding that is not supported by substantial evidence and must be vacated." *Id.*; *see also Terry v. Astrue,* 580 F.3d 471, 478 (7th Cir. 2006); *Prochaska v. Barnhart,* 454 F.3d 731, 736.

The Commissioner, citing to *Donahue v. Barnhart*, contends that the ALJ was entitled to rely on the VE's testimony because Semrau did not challenge it at the time of the hearing. (Doc. No. 21 at 8). However, *Donahue* was decided before SSR 00-4p went into effect. *Donahue,* 279 F.3d 279, 446. While the Seventh Circuit has since expressed reservation about job numbers provided by VE's, *Donahue* has not expressly been overruled. However, more recently, the

12

Seventh Circuit has held that "a claimant's failure to raise a possible violation of SSR 00–4p at the administrative level does not forfeit the right to argue later that a violation occurred." *Overman,* 546 F.3d at 463 (citing *Prochaska,* 454 F.3d at 735). When the issue is raised for the first time on appeal, however, the claimant must identify a conflict between the VE's testimony and the DOT that is (1) actual, (2) material, and (3) apparent in order to demonstrate that remand is warranted due to a violation of the SSR 00–4p. *See Overman,* 546 F.3d at 463 (holding that after failing to identify a conflict at a hearing, the claimant must identify an apparent conflict upon appeal); *Terry,* 580 F.3d at 478 (holding that if there is no actual conflict between the VE's testimony and the DOT, any error is harmless); *Prochaska,* 454 F.3d at 735–36 (holding that a conflict must be material to the ALJ's Step Five determination in order to warrant attention on remand).

Semrau failed to raise any issues at the administrative hearing between the VE's testimony and the information contained in the DOT. Semrau argues that the ALJ erred when he fully credited the VE's testimony without knowing the supporting basis for the VE's opinion as to job numbers. Consequently, at this stage of the proceedings to establish the need for remand, Semrau must demonstrate there was an "obvious" inconsistency between the VE's testimony and the DOT. *Overman*, 546 F.3d T 463. Semrau, however, merely asserts that the DOT does not provide a basis for the VE's opinion as to job numbers and that the basis for the VE's opinion is undisclosed. Semrau never showed a specific conflict let alone identify any discrepancies that challenged the VE's testimony. Thus, the ALJ's Step Five analysis does not require remand.

## IV. CONCLUSION

For the above reasons, this Court concludes that the ALJ did not err in the Listing analysis by failing to consult another medical expert. In addition, the ALJ's RFC determination

was sufficiently articulated and supported by substantial evidence.  Finally, the ALJ's conclusions at steps four and five of the analysis were not in error.  Therefore, Semrau's motion for reverse or remand is **DENIED**.  [Doc. No. 16].  This Court **AFFIRMS** the Commissioner's decision pursuant to sentence four of 42 U.S.C. § 405(g).  The Clerk is instructed to term the case and enter judgment in favor of the Commissioner.

**SO ORDERED**

Dated this 29th day of June, 2016.

S/Christopher A. Nuechterlein  
Christopher A. Nuechterlein  
United States Magistrate Judge